UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 11-cv-22894-SEITZ/SIMONTON

DEAN L. SEAVERS,

    Plaintiff,

v.

GENERAL ELECTRIC COMPANY,
a New York corporation,

    Defendant.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE AS DEFENDANT OF UNITED TECHNOLOGIES CORPORATION**

Plaintiff, Dean L. Seavers ("Seavers"), by and through undersigned counsel, hereby files his Opposition to the Motion to Intervene filed by United Technologies Corporation ("UTC"), and in support thereof, states as follows:

**I.    STATEMENT OF THE CASE**

This case arises from a May 26, 2009 Leadership Incentive/Retention Bonus Agreement (hereinafter referred to as the "Retention Package" or "Agreement") between Seavers, who is the former President and Chief Executive Officer ("CEO") of General Electric Security ("GE Security") and Defendant General Electric Company ("GE" or "Defendant"). In March 2009, Defendant decided to market its GE Security business for sale. Defendant recognized the integral role that Seavers would play in the attempted sale or transfer of the GE Security business and offered Seavers the Retention Package in order to secure his best efforts in facilitating the sale of the business and undertaking transitional operations after the closing. The Retention Package provided for the payment of a special bonus incentive, or "retention bonus" equal to

One Million, Forty Thousand Dollars ($1,040,000.00), to be paid in two equal installments, one-half at Closing and the other half one year following Closing, subject to certain terms and conditions.

Following execution of the Agreement by the parties, Seavers continued in his role as President and CEO of GE Security. During this time, Seavers satisfied his obligations pursuant to the Agreement. Specifically, Seavers led the presentation of the GE Security business to potential buyers, continued to run GE Security and delivered on target performances for the fourth quarter of 2009 and first quarter of 2010. On November 12th, 2009, Defendant announced that an agreement was signed with proposed Intervenor, United Technologies Corporation ("UTC") for UTC to acquire Defendant's GE Security business. The sale of GE Security to UTC closed on or about March 1, 2010, and Seavers commenced working for UTC after closing. Upon closing, Seavers received from Defendant the first installment of the retention bonus from Defendant, or Five Hundred Twenty Thousand Dollars ($520,000.00).

Seavers' employment with UTC ended in October 2010. Seavers filed the instant lawsuit to recover the second installment of the retention bonus, as well as twelve months severance pay, to which Seavers is entitled to pursuant to the terms of the Retention Package with Defendant.

## II. INTRODUCTION

No basis exists for UTC to intervene in this action. Plaintiff's cause of action is based on an agreement between himself and Defendant General Electric Company. UTC is not a party to that agreement, and no reason exists for UTC to inject itself into this simple breach of contract case. Specifically, UTC has apparently agreed to fully indemnify GE for any damages and expenses that GE may incur in connection with this litigation. *See* D.E. #10, p. 3. However, such indemnification agreement does not make UTC a proper party to this lawsuit. UTC's

2

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

interests will be fully and adequately represented by Defendant because Defendant and UTC share the same interests and objectives in defending this lawsuit. Specifically, the ultimate objective by both Defendant and UTC is to persuade the fact finder that Defendant did not breach its Agreement with Seavers. Accordingly, UTC's Motion to Intervene as Defendant (the "Motion") must be denied.

### III. ARGUMENT

#### A. UTC Has Not Met the Requirements for Intervention as a Matter of Right

In order to intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure, UTC must establish <u>all</u> of the following: (i) its application to intervene is timely; (ii) it has an interest relating to the property or transaction which is the subject of the action; (iii) it is so situated that disposition of the action, as a practical matter, may impede or impair its ability to protect that interest; and (iv) its interest is represented <u>inadequately</u> by the existing parties to the suit. *See* Fed. R. Civ. P. 24(a)(2); *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (citing *Georgia v. U.S. Army Corps. of Eng'rs*, 302 F.3d 1242, 1250 (11th Cir. 2002).[1] UTC's Motion must be denied because UTC cannot demonstrate that its interests are inadequately represented by Defendant.

##### 1. UTC's Interests Are Adequately Represented.

Even if UTC's interests are in danger of being impaired by the outcome of this case, which they are not, UTC has not demonstrated that its interests will be inadequately represented by Defendant. The most important factor in determining the adequacy of representation is how the interests of the absentee, or UTC, compare with the interests of the present parties. *See C.*

---

[1] Rule 24(a)(2) requires a court to permit any party who, in a timely motion, "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

3

*Wright and Miller,* 7A Federal Practice and Procedure at 524 (1972). In the Eleventh Circuit, it is "presumed that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention." *U.S. v. Georgia,* 19 F.3d 1388, 1394 (11th Cir. 1994) (citations omitted) Otherwise stated, adequate representation will be found where the objectives sought to be achieved by the proposed intervenor are the same as the goals of an existing party. *See Sierra Club, Inc. v. Leavitt,* 488 F.3d 904, 910-911 (11th Cir. 2007) (intervention was denied where the movant and the defendant shared the same interest in the lawsuit); *see also U.S. v. Georgia,* 19 F.3d at 1394 (intervention by a citizen group was denied where the county school board shared the citizen's group ultimate purpose to eliminate the effects of segregation, and there was no evidence of any gross negligence or bad faith by the school board in pursuing that goal); *Florida Key Deer v. Brown,* 232 F.R.D. 415, 418-419 S.D. Fla. 2005), *aff'd* 272 Fed. Appx. 780 (11th Cir. 2008) (adequate representation was found where the proposed intervenor and the defendants both sought the same result).

Further, Defendant has a legal obligation to represent the interests of UTC, and as such, UTC, the proposed intervenor, carries the "<u>onerous</u>" burden of making a compelling showing of inadequate representation. *MPA Construction, Inc. v. XL Specialty Insurance Co.,* 349 F.Supp.2d 934, 938 (D. Md. 2004) (citations omitted) Even if UTC is able to carry this burden, which it cannot, the court will find adequate representation if: (i) no collusion is shown between the representative party and opposing party, (ii) the representative party does not have an interest adverse to the proposed intervenor, and (iii) the representative does not fail in the fulfillment of its duty. *See Wyatt v. Hanan,* 170 F.R.D. 189, 192 (M.D. Ala. 1995) ("to rebut this presumption [that its interests are adequately represented,] the movant must demonstrate 'adversity of interest, collusion or nonfeasance.'") *See also Clark v. Transcont. Ins. Co.,* 2009 WL 387129, at *7

4

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

(M.D. Ala. 2009) (citing *Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004); *see also Midwest Employers Casualty Co. v. East Alabama Healthcare,* 170 F.R.D. 195, 198-199 (M.D. Ala. 1996) (adequate representation was found where defendants shared the movant's objective to obtain coverage; defendants were incentivized to vigorously defend the declaratory action, and there was no showing of collusion, adversity to the plaintiff's position, or a lack of competence by the defendants); *see also Resort Timeshare Resales, Inc. v. Stuart,* 764 F. Supp. 1495, 1500 (S.D. Fla. 1991) (lobbyist's motion to intervene was denied where the record contained no evidence that there was any collusion between the defendants and the plaintiff, nor any adversity to the lobby, nor any lack of competence by the defendants.) Here, UTC has not demonstrated adversity of interest, collusion, or nonfeasance.

UTC is unable to overcome the presumption that its interests are <u>not</u> adequately represented by Defendant. UTC makes a fledging attempt to overcome this presumption by claiming that the burden to overcome this presumption is minimal. *See* D.E. #10, p. 6. Further, UTC contends that even though GE and UTC share the same "ultimate objective" to avoid liability, that this does not mean that their interests are identical for purposes of adequate representation. *Id.* at p. 7. To support its misguided position, UTC curiously admits that while its interests are aligned with those of Defendant, that they do not have the same "ultimate objective" because in the end, UTC pays any adverse judgment for severance or retention benefits. *Id.*

UTC's position is unavailing and does not square with the fact that even if UTC's interests were in danger of being impaired or impeded, **there is no reason to doubt that its interests will be adequately represented by Defendant, which has the identical objective as UTC, namely, to persuade the fact finder that GE did not breach its Agreement with the**

5

**Plaintiff.** Stated otherwise, Defendant shares the same objective as UTC, and UTC has submitted no valid reason to assume that Defendant will not defend this lawsuit in a skillful manner and that UTC's interests will not be adequately represented. *See Midwest Employers Casualty Co. v. East Alabama Healthcare,* 170 F.R.D. 195, 198-199 (M.D. Ala. 1996) (adequate representation was found where the defendants shared the movant's objective to obtain coverage: the defendant had every incentive to vigorously defend the declaratory action; there was no showing of collusion, any adversity to the plaintiff's position, or a lack of competence by the defendants); *see also, Williams Island Synagogue, Inc. v. City of Aventura,* 222 F.R.D. 554, 556-557 (S.D. Fla. 2004), *aff'd* 138 Fed. Appx. 299 (11th Cir. 2005) (the court held that the "speculative argument that the defendant may choose to settle this litigation at some undetermined time in the future for political purposes insufficient to overcome the presumption that the 2600 Association's interests are now adequately represented by Defendant because the Court concludes that the two share an identical 'ultimate objective' in this litigation.") Significantly, the fact that Defendant and UTC are represented by the same counsel[2] further supports Seavers' position that UTC's interests are adequately represented. *See Atl. Refreshing & Restoration, Inc. v. Travelers Cas. & Sec. Co. of Am.,* 272 F.R.D. 26, 29 (D.C. 2010) (representation by the same counsel is evidence that parties (i.e. defendant and proposed intervenor) have no conflicting arguments or defenses).

UTC improperly relies on a litany of case law to support its position that intervention should be allowed on the basis that its interests will not be adequately represented by Defendant in this matter. First, UTC's reliance on the case of *Holmes v. Gov't of the Virgin Islands,* 61 F.R.D. 3, 4-5 (D.V.I. 1973) is factually misplaced. *See* D.E. #10, p. 7. In the *Holmes* case,

---

[2] Mr. Joseph Raia, Esq. of Gunster, Yoakley & Stewart, P.A. has appeared as counsel for both Defendant General Electric Company and proposed Intervenor UTC.

6

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

which involved a declaratory judgment action against the Government of Virgin Islands, the court permitted the Virgin Islands Refinery Corporation to intervene because there was a <u>real possibility</u> that the Government's representation of applicant's position might be inadequate. In reaching its decision, the *Holmes* court opined that while it would seem that both parties would seek the same outcome (a determination that the passage of a certain Bill was valid), the interests of the intervenors was not identical to the interests of the Government. The court explained that the Government was likely:

> anxious to see the statute in question upheld so that the project can go forward. But it is not impossible to imagine that, as the litigation developed, the Government might conclude that a new statute passed under unquestionable circumstances might better serve their interest. Or, they might conclude that a change in the original plans was warranted and, therefore, the statute need not be vigorously defended. VIRCO [Virgin Islands Refinery Corporation], on the other hand ... cannot afford to decide that governmental considerations warrant a determination that the law was invalid....

*Holmes*, 61 F.R.D. at 5. Unlike the *Holmes* case, in the present action, UTC's interests will be adequately represented because GE and UTC share identical interests, and **there are no plausible unforeseen circumstances which will change this fact**.

Likewise, UTC's reliance on the case *Atl. Refreshing & Restoration, Inc. v. Travelers Cas. & Sec. Co. of Am.*, 272 F.R.D. 26, 29 (D.C. 2010) is also improper. *See* D.E. #10, p. 7. In that case, the court generally held that the petitioner (intervenor) should not be forced to rely on the defendant to raise defenses in a case where its own liability was at stake. However, in the *Atl. Refreshing* case, unlike in the instant action, the intervenor's interests were not adequately represented because the intervenor sought certain defenses not propounded by the defendant. Namely, the intervenor sought to enforce the binding arbitration provision in the subcontract, a defense which the defendant had not exerted. *Atl. Refreshing & Restoration, Inc.*, 272 F.R.D. at

7

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

29. Significantly, here, UTC will not raise any claims or defenses that would not otherwise be raised. In fact, the defenses propounded by Defendant are identical to UTC's affirmative defenses. *See* D.E. #9 and D.E. # 10-1, Ex. 4. In sum, UTC has failed to show that its objectives are any different from those of Defendant, and UTC should not be permitted to intervene as a matter of right.

### B. Permissive Intervention Should Be Denied.

Permissive intervention may be allowed when a proposed intervenor's "claim or defense shares with the main action a common question of law or fact." *See* Fed. R. Civ. P. 24(b)(1)(B). However, permissive intervention is "wholly discretionary" even if that requirement is met. *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996) (quoting *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 594 (11th Cir. 1991). Permissive intervention is properly denied when it would prejudice the existing parties or bog down the case with collateral issues. *See Purcell,* 85 F.3d at 1514.

UTC's position that permissive intervention is warranted is without merit. UTC contends that the questions of law and fact are identical and that there will be no additional burden for Plaintiff to prove its case against GE or UTC, because they are based on the same contract. *See* D.E. #10, pp. 8. UTC further contends permissive intervention is warranted because "its defenses arise from the same facts and claims set forth in the Complaint. If Seavers obtains a judgment against GE for breach of the Retention Agreement, GE will look to UTC for recovery." *Id.* UTC's position must be rejected because the duplicative nature of its claims or interests, as set forth above, will unduly delay the adjudication of the rights of the parties to this lawsuit. For example, the National Rifle Association ("NRA") sought to intervene in the case *Wollschlaeger et al. v. Scott,* 2011 WL 2672250 at *3 (S.D. Fla. 2011) in order to defend the constitutionality of

8

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

the Firearms Owner's Privacy Law and the rights this law protects. The *Wollschlaeger* court explained that the defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction made clear that the defendants will likewise defend the constitutionality of the law and the rights it protects. Thus, the court held that the duplicative nature of the NRA's claims or interests will unduly delay the adjudication of the rights of the parties to this lawsuit.

Further, UTC contends that intervention will promote judicial efficiency and contends that "permitting UTC to intervene in this action will allow UTC to become liable for any adverse money judgment without additional litigation." *See* D.E. #10, p. 8. Simply put, UTC's contention that no additional litigation will ensue if UTC is permitted to intervene is without merit. Namely, Plaintiff only seeks a judgment against GE in this case. UTC's ultimate responsibility to reimburse GE for such judgment is of no moment to Plaintiff and should also be of no concern to this Court. Significantly, UTC has readily admitted in its Motion that it has already "agreed to defend the lawsuit and to indemnify GE for the claims for unpaid severance and retention benefits." *See* D.E. #10, p. 3. In addition, pursuant to Exhibit 3 of the Purchase and Sale Agreement between Defendant and UTC, the Acquirer (UTC) shall be "exclusively responsible for making any payments to 'Transferred Employees" under the Retention Agreements following the Closing Date." *See* D.E. #10-1, Ex. B. Moreover, both UTC's and GE's principal place of business is in Connecticut. The Southern District of Florida is not the proper forum for any "additional litigation" that could potentially, albeit unlikely, ensue between GE and UTC, as the principal place of business for both UTC and GE is Connecticut. Thus, UTC's concern about potential "additional litigation" between it and GE cannot serve as a basis for UTC's intervention in this case. Lastly, UTC alleges that its intervention will facilitate discovery, since party discovery is more expedient than non-party discovery. *See* D.E. #10, p. 9.

9

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

UTC can and should be expected to fully cooperate in discovery whether or not it is a party to this lawsuit.

Seavers' lawsuit is based on Defendant's breach of the Retention Package. UTC was <u>not</u> a party to this Agreement. Allowing UTC to intervene will only serve to bog down this case with collateral issues. In sum, permissive intervention should be denied when such intervention would "clutter the action unnecessarily...." *Arney v. Finney,* 967 F.2d 418, 421 (10th Cir. 1992). Accordingly, this Court in its discretion should deny UTC's motion for permissive intervention.

WHEREFORE, Plaintiff, Dean L. Seavers, respectfully requests that this Honorable Court deny UTC's Motion to Intervene as Defendant.

October 3, 2011

Respectfully submitted,

ZARCO EINHORN SALKOWSKI & BRITO, P.A.
*Counsel for Plaintiff*
Miami Tower
100 S.E. 2nd Street, 27th Floor
Miami, Florida 33131
Telephone: (305) 374-5418
Telecopier: (305) 374-5428

By:    /s/ Robert M. Einhorn
       ROBERT M. EINHORN
       Florida Bar No. 858188

10

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 3, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/Robert M. Einhorn
ROBERT M. EINHORN

## SERVICE LIST

Joseph L. Raia, Esq.
Gunster Yoakley & Stewart, P.A.
One Biscayne Tower, Suite 3400
Two South Biscayne Boulevard
Miami, FL 33131

11

ZARCO EINHORN SALKOWSKI & BRITO
MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428