UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:11-CV-22894-SEITZ

DEAN L. SEAVERS,

    Plaintiff,

vs.

GENERAL ELECTRIC COMPANY,
a New York corporation,

    Defendant.

and

United Technologies Corporation, a
Delaware corporation,

    Intervenor/Defendant
_____/

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT**
**UNITED TECHNOLOGIES CORPORATION**

    Defendant, United Technologies Corporation ("UTC"), hereby answers Plaintiffs' Complaint dated July 14, 2011. All of the allegations of the Complaint are denied unless expressly admitted.

    1.    The allegations of Paragraph 1 are admitted.

    2.    As to Paragraph 2, UTC has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiff to his proof.

    3.    The allegations of Paragraph 3 are admitted.

123728

4. Defendant UTC states that there is subject matter jurisdiction over this matter by virtue of the diversity of the parties; and except as expressly so admitted, the allegations of Paragraph 4 are denied.

5. Defendant UTC agrees the venue is proper in this district. Except as expressly so admitted, the allegations of Paragraph 5 are denied.

6. As to Paragraph 6, UTC has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiff to his proof.

7. As to Paragraph 7, UTC has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiff to his proof.

8. As to Paragraph 8, UTC has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiff to his proof.

9. As to Paragraph 9, UTC admits that General Electric Company ("GE") and Seavers entered into a Leadership Incentive/Retention Bonus (hereinafter referred to as the "Agreement") dated May 26, 2009. Except as expressly so admitted, UTC has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiff to his proof.

10. As to Paragraph 10, UTC has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiff to his proof.

11. UTC expressly refers to the terms of the Agreement and except as expressly so admitted, the allegations of Paragraph 11 are denied.

12. UTC expressly refers to the terms of the Agreement and except as expressly so admitted, the allegations of Paragraph 12 are denied.

13. UTC expressly refers to the terms of the Agreement and except as expressly so admitted, the allegations of Paragraph 13 are denied.

14. As to Paragraph 14, UTC has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiff to his proof.

15. The allegations of Paragraph 15 are admitted.

16. UTC admits that Seavers met with Bill Brown at some point in December 2009 or January 2010 and that Mr. Brown offered Seavers a position in UTC's newly created Global Security Products ("GSP") division, except as expressly so admitted, the allegations of Paragraph 16 are denied.

17. UTC admits that Seavers rejected the GSP position at some point in February 2010, except as expressly so admitted, the allegations of Paragraph 17 are denied.

18. The allegations of Paragraph 18 are admitted.

19. UTC agrees that GE paid Seavers the first installment of the Retention Bonus under the Agreement of $520,000; except as expressly so admitted, UTC has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiff to his proof.

20. UTC agrees that in March 2010, Seavers was offered a position within the Global Services unit at UTC Fire & Security which encompassed five different profit centers of UTC's business, including Continental Europe, Americas, Australia, Asia, United Kingdom, Ireland and South Africa.  UTC further admits that this position was comparable to the position that Seavers had held as CEO of General Electric Security.  UTC further admits that UTC permitted Seavers to work out of his home office in Miami following the closing; except as expressly so admitted, the allegations of Paragraph 20 are denied.

21. The allegations of Paragraph 21 are denied.

22. The allegations of Paragraph 22 are denied.

23. UTC admits that Seavers met with Ari Bousbib in May 2010. Except as expressly so admitted, the allegations of Paragraph 23 are denied.

24. UTC admits that Seavers met with Mr. Brown in June 2010. Except as expressly so admitted, the allegations of Paragraph 24 are denied.

25. UTC admits that UTC desired Seavers to remain with UTC. Except as expressly so admitted, the allegations of Paragraph 25 are denied.

26. UTC admits that Louis Chênevert met with Seavers at some point in August or September 2010. Except as expressly so admitted, the allegations of Paragraph 26 are denied.

27. UTC admits that at some point in August or September in 2010, Nora LaFreniere, General Counsel for UTC Fire & Security, asked Seavers to help resolve an ethics claim relating to UTC's business in Continental Europe and that Seavers agreed to do so. Except as expressly so admitted, the allegations of Paragraph 27 are denied.

28. The allegations of Paragraph 28 are admitted.

29. UTC admits that in October 2010, at the request of Mr. Brown and Ms. Havanec, Seavers was requested to visit the Continental Europe Operations to gain a better understanding as to the financial performance of that business and to provide business guidance. Except as expressly so admitted, the allegations of Paragraph 29 are denied.

30. The allegations of Paragraph 30 are denied.

31. UTC admits that Seavers expressed that he was uncomfortable making a presentation to UTC's Board of Directors and, in October 2010, Seavers resigned his

employment with UTC. Except as expressly so admitted, the allegations of Paragraph 31 are denied.

32. UTC admits that Seavers was requested to fly to Connecticut to meet with Mr. Brown on October 11, 2010 and that Seavers met with Ms. Havanec and Mr. Brown on that day. UTC also admits that Seavers wased ask to return his identification badge and laptop computer to UTC that day in accordance with standard procedure for employees who have resigned their employment. Except as expressly so admitted, the allegations of Paragraph 32 are denied.

33. UTC avers that Seavers decision to resign his employment with UTC was voluntary and unilateral; except as expressly so admitted, the allegations of Paragraph 33 are denied.

34. The allegations of Paragraph 34 are denied.

35. As to Paragraph 35, UTC has insufficient knowledge or information upon which to form a belief and, therefore, leaves Plaintiff to his proof.

36. The allegations of Paragraph 36 are denied.

37. The allegations of Paragraph 37 are denied.

38. The allegations of Paragraph 38 are denied.

**COUNT ONE**

39. UTC incorporates its responses to Paragraphs 1 through 38 of this Answer as if fully set forth herein.

40. The allegations of Paragraph 40 are admitted.

41. The allegations of Paragraph 41 are denied.

42. The allegations of Paragraph 42 are denied.

43. The allegations of Paragraph 43 are denied.

44. The allegations of Paragraph 44 are denied.

## AFFIRMATIVE DEFENSES

Plaintiff is barred from recovery because he committed a material breach of the Agreement by failing to remain employed by UTC or its subsidiary for one (1) year after the UTC acquisition of the business of General Electric Security.

Plaintiff is barred from recovery by the doctrine of estoppel. Plaintiff agreed that UTC offered him comparable employment on comparable terms, accepted that employment, and held that employment for seven months until he resigned. UTC relied to its deteriment on the decisions and conduct of Plaintiff and invested time and resources to create and maintain comparable employment for Plaintiff.

Plaintiff is barred from recovery by the doctrine of waiver. Plaintiff agreed that UTC offered him comparable employment on comparable terms, accepted that employment, and held that employment for seven months until he resigned. Plaintiff waived any right to claim that UTC failed to offer him comparable employment based on this conduct.

Any severance benefits awarded to Plaintiff are subject to a set off in the amount of any compensation paid to Plaintiff by UTC or its subsidiary during his employment with UTC or any UTC subsidiary.

Dated: October 12, 2011

GUNSTER, YOAKLEY & STEWART, P.A.
Attorneys for Defendant
One Biscayne Tower – Suite 3400
Two South Biscayne Boulevard
Miami, FL  33131
Telephone: (305) 376-6000
Facsimile (305) 376-6010

By: /s/ Joseph L. Raia
  JOSEPH L. RAIA
  Florida Bar No. 322083
  jraia@gunster.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Joseph L. Raia
      JOSEPH L. RAIA

**SERVICE LIST**

Alyssa N. Shapiro, Esq.
Robert M. Einhorn, Esq.
Zarco, Einhorn, Salkowski & Brito, P.A.
Miami Tower, Suite 2700
100 S.E. 2nd Street
Miami, FL  33131
Tel: (305) 374-5418
Fax: (305) 374-5428
reinhorn@zarcolaw.com

WPB_ACTIVE 4896757.1